(38128.—

THE PEOPLE *ex rel.* Kaneland Community Unit School District No. 302, Petitioner, *vs.* MICHAEL J. HOWLETT *et al.,* Respondents.

*Opinion filed January 22, 1964.*

MATTHEWS, JORDAN, DEAN & SUHLER, of Aurora, (JOHN T. MATTHEWS, of counsel,) for petitioner.

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES, Assistant Attorney General, of counsel,) for respondents.

Mr. JUSTICE HOUSE delivered the opinion of the court:

House Bill No. 1583, passed by the Seventy-third General Assembly and approved by the Governor, appropriates $750,000, or so much thereof as may be necessary, from the motor fuel tax fund to Kaneland Community Unit District No. 302 in order to pay valid judgments entered against that district in actions arising out of a school bus accident which occurred on March 10, 1958. The preamble of the bill expresses a recognition by the General Assembly that this court's decisions in *Molitor* v. *Kaneland Community Unit District,* 18 Ill.2d 11, and *Molitor* v. *Kaneland Community Unit District,* 24 Ill.2d 467, had the effect of imposing a unique financial burden upon the Kaneland Dis-

trict to which no other governmental unit was subjected and that this burden should, in equity and good conscience, be borne by the State rather than by this one school district.

The Kaneland District, upon leave granted by this court, filed its original petition for *mandamus* against the Auditor of Public Accounts, the State Treasurer and the Director of the Department of Finance to compel payment of the appropriation authorized by House Bill No. 1583. The respondent State officers do not question the public purpose of the bill or the authority of the General Assembly to make the appropriation, but they read our decision in *City of Monmouth* v. *Lorenz, ante,* p. 60, in such a manner as to invalidate the appropriation here involved. This is based upon their interpretation of the *Monmouth* case to mean that money cannot be appropriated from the motor fuel tax fund by subsequent separate legislation.

The question raised and decided in the *Monmouth* case was not whether the Motor Fuel Tax Act could be amended by subsequent separate legislation, but was whether the subsequent separate legislation, (section 10a of the Prevailing Wage Law, Ill. Rev. Stat. 1961, chap. 48, par. 39a—10a,) which dealt with the allocation of motor fuel tax funds was complete in itself and intelligible without reference to section 8 of the Motor Fuel Tax Act, (Ill. Rev. Stat. 1961, chap. 120, par. 424,) which also deals with the allocation of motor fuel tax funds. We found that section 10a was not complete in itself and since section 8 of the Motor Fuel Tax Act would be amended if section 10a of the Prevailing Wage Law were given effect, section 10a violated section 13 of article IV of our constitution because the amended section had not been inserted at length in the new act.

The confusion may be explained by a closer examination of section 8. After deduction of certain items (primarily administrative expense) the net balance is *apportioned, 35%* to the Department of Public Works and Build-

ings and the other 65% by fixed percentages in bulk to municipalities, counties and road districts. Thereafter, the Department of Finance must take a further step with respect to the 65% apportionment, namely, it must *allot* to each municipality, county and road district its proportionate share based upon population. We think it readily apparent that section 10a of the Prevailing Wage Law, which prohibits allotment to any public body that has failed to file a certificate of compliance, is repugnant and contrary to section 8 and creates such uncertainty as to make section 8 impossible to administer. The same is not true with respect to the payment of the appropriation to Kaneland here involved. There is no further allotment of the funds making up the 35%. There is only the appropriation sent to the Department to be placed in the State's road fund "and used for the purposes provided by law."

House Bill No. 1583 is complete in itself and intelligible without reference to any provision of the Motor Fuel Tax Act. There is no confusion or uncertainty as to what the State officials are to do with the motor fuel tax funds in this case, as there was in the *Monmouth* case. Here the officials have one administrative act to perform, namely, the execution of the necessary warrant. It is well established that where the new law is complete in itself without reference to the prior legislation, it is valid although the new law may modify or amend the existing statute by implication. *Hertz Corp.* v. *Taylor,* 15 Ill.2d 552; *Pickus* v. *Board of Education of City of Chicago,* 9 Ill.2d 599; *Co-ordinated Transport, Inc.* v. *Barrett,* 412 Ill. 321.

A writ of *mandamus* is awarded commanding the respondent State officers to pay the appropriation authorized by House Bill No. 1583 to Kaneland Community Unit School District No. 302.

*Writ awarded.*