BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 508, Plaintiff-Appellee, *v.* ILLINOIS COMMUNITY COLLEGE BOARD *et al.*, Defendants-Appellants.

First District (5th Division)    No. 77-1664

Opinion filed August 28, 1978.

William J. Scott, Attorney General, of Chicago (Karen Konieczny, Assistant Attorney General, of counsel), for appellants.

Arvey, Hodes, Costello & Burman, of Chicago (George L. Siegel, of counsel), for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendants appeal from an order granting plaintiff's motion for summary judgment and requiring defendants to certify to the State Comptroller plaintiff's claimed credit hour grants. On appeal defendants contend that: (1) the circuit court lacked the jurisdiction needed to hear the action, and (2) assuming the circuit court had jurisdiction, its order was erroneous.

The following evidence, which is not in dispute, is pertinent to the disposition of this appeal.

On August 3 and August 18, 1977, plaintiff filed with defendants its claims for a reimbursement for accumulated "credit hours." Plaintiff filed its claims under section 2—16 of the Public Community College Act (Ill. Rev. Stat. 1977, ch. 122, par. 102—16), which provided that a community college district "is entitled to claim a credit hour grant for all instructional categories, the average of which is not less than $17.61 for each semester hour or equivalent in a course carried through each mid-term by each student in attendance." Plaintiff claimed a total of 102,082.44 credit hours, all of which related to the 1977 summer school session, which is included in fiscal year 1978. Effective July 1, 1977, the legislature appropriated $100,127,000 for credit hour grants for fiscal year 1978 (Pub. Act 80-59). Defendants, in their answer to plaintiff's complaint, admitted that they

refused to certify plaintiff's claims "as required by Section 2—16 of the Illinois Community College Act for reason that said Act states: 'the rate of the credit hour grant shall be specified for each year in the Act making the appropriation for this purpose' and the Appropriation Act * * * did not specify the rates for the credit hour grants * * *." Plaintiff filed suit for an injunction and mandamus to compel certification of its claims at the statutory minimum of $17.61 per hour. On October 19, 1977, the trial court granted plaintiff's motion for summary judgment, and directed defendants to certify to the State Comptroller plaintiff's claims at an average rate of not less than the statutory minimum.

On November 7, 1977, defendants filed a notice of appeal.

OPINION

■■ Defendants first contend that the circuit court was without jurisdiction to hear this case because it is a suit against the State and barred by the doctrine of sovereign immunity. They cite "An Act in relation to immunity for the State of Illinois" (Ill. Rev. Stat. 1977, ch. 127, par. 801), which provides that: "Except as provided in 'AN ACT to create the Court of Claims * * *', filed July 17, 1945, as amended, the State of Illinois shall not be made a defendant or party in any court." Defendants stress that this action was brought against State officials, and cite the "general rule" that where suit is brought against a State official, and the judgment or decree although nominally against the official could operate to control the action of the State or subject it to liability, the cause in effect is a suit against the State. (*Struve v. Department of Conservation* (1973), 14 Ill. App. 3d 1092, 303 N.E.2d 32.) Whether a suit is considered to be brought against the State and barred by sovereign immunity depends, however, not on the identification of the formal parties in the record, but on the issues involved and the relief sought. (*Moline Tool Co. v. Department of Revenue* (1951), 410 Ill. 35, 101 N.E.2d 71; *G. H. Sternberg & Co. v. Bond* (1975), 30 Ill. App. 3d 874, 333 N.E.2d 261.) A suit against State officials which seeks to compel them to perform their duty is not held to be a suit against the State, and the payment of State funds may therefore be compelled. (See *People ex rel. Hilger v. Myers* (1969), 114 Ill. App. 2d 478, 252 N.E.2d 924; *People ex rel. Kaneland Community Unit School District No. 302 v. Howlett* (1964), 30 Ill. 2d 128, 195 N.E.2d 678.) Defendants argue that this suit should be barred because the certification of claims for reimbursement is the type of discretionary rather than ministerial action which the courts have consistently refused to compel government officials to take. (See *Mora v. State of Illinois* (1977), 68 Ill. 2d 223, 369 N.E.2d 868.) As support for this argument defendants cite section 2—16 of the Public Community College Act (Ill. Rev. Stat. 1977, ch. 122, par. 102—16) which states in part that "[u]pon approval of any claim under this Section, the State Board shall prepare and certify to the

State Comptroller the report of claims for community college grants * * *." Defendants argue that under this statute, they have the "power to approve" plaintiff's claims, and that this power makes the certification of claims a discretionary governmental action which cannot be compelled. Further, as support for their argument, defendants cited *Boards of Education v. Cronin* (1977), 54 Ill. App. 3d 584, 370 N.E.2d 19.

We disagree with defendants' argument. In *Cronin*, plaintiffs petitioned for a writ of mandamus to compel defendants, State education officials, to disburse certain monetary amounts. These amounts were claimed as reimbursement for expenses plaintiffs incurred in providing extraordinary services to handicapped children. Plaintiffs alleged that defendants had violated their statutory duty by authorizing reimbursement of some but not all of plaintiffs' claims. The statute authorizing such reimbursements specifically provided, however, that they could only be made after:

"[T]he Superintendent of Public Instruction has reviewed the case study and staffing recommendation for each child referred and has approved the district's recommendations regarding eligibility of the child for the extraordinary special education services and facilities. (Ill. Rev. Stat. 1977, ch. 122, par. 14—7.02a3.)"

The court in *Cronin* accordingly held that because the defendants were under no legal duty to approve a reimbursement of all claims submitted by plaintiffs, the suit was one which sought a monetary judgment against the State and was not properly within the circuit court's jurisdiction. In the instant case, however, no language in the statute governing defendants' certification of claims indicates that defendants have the discretion and lack of duty to perform that existed in *Cronin*. Section 2—16 of the Public Community College Act (Ill. Rev. Stat. 1977, ch. 122, par. 102—16) indicates that community college districts, such as plaintiff in this case, are "entitled to a reimbursement" for properly claimed credit hours. That statute also states that:

"Credit hour grants shall be provided for courses that are normally part of the baccalaureate-oriented programs, occupational programs or general studies instructional programs approved by the Illinois Community College Board that apply to an associate degree or certificate." (Ill. Rev. Stat. 1977, ch. 122, par. 102—16.)

Defendants do not claim that plaintiff's claims were improperly filed or arose from instructional programs which had not been previously approved for coverage. Further, the portion of the statute which refers to defendants' "approval" of claims does not confer any discretion to conduct a substantive review and approve or disapprove the claims for any cause; rather, it is part of the statute's timetable for the overall

certification procedure. We note that after failing to raise the entire issue at the trial court, counsel for defendants admitted at oral argument on appeal that if a clerical determination revealed that the claims were arithmetically correct, defendants would normally be required by section 2—16 of the statute to certify them for payment. We conclude that the complaint filed by plaintiffs did not seek to compel defendants to take a discretionary, noncompellable action, and that the suit was properly within the circuit court's jurisdiction.

■■ Defendants next contend that even if the circuit court had jurisdiction of this case, mandamus was an inappropriate remedy. Defendants emphasize that section 2—16 states that the yearly appropriation act shall specify the rates of payment for credit hour grants. Unlike previous appropriation acts, however, defendants point out that the appropriations act for fiscal 1978 (Pub. Act 80-59) failed to include a rate schedule which specified the dollar amounts to be paid for the various college programs. Defendants, citing the "axiomatic" rule that administrative bodies have only those powers conferred upon them by statute (*Homefinders, Inc. v. City of Evanston* (1976), 65 Ill. 2d 115, 357 N.E.2d 785), conclude that without a rate schedule they had no authority to certify or pay any of plaintiff's credit hour claims, and that they should not have been ordered by the circuit court to do so. We reject this argument. Although defendants emphasize section 2—16's reference to specified rates in future appropriation acts, the statute also states clearly that the minimum rate for all instructional categories shall not be less than $17.61 for each semester hour. The cardinal rule of statutory construction is that a statute must be construed so as to ascertain and give effect to the intention of the legislature. (*Electrical Contractors Association v. Illinois Building Authority* (1966), 33 Ill. 2d 587, 213 N.E.2d 761.) The legislative intent should be sought primarily from the language used in the statute, and where that language is certain and unambiguous, the only legitimate function of the court is to enforce the law as enacted. (*Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 256 N.E.2d 758.) To accept defendants' argument would be to ignore these principles, by failing to recognize that the legislature specifically provided that $17.61 would be the minimum rate of credit hour reimbursement. We also note that the legislature passed an appropriations act (Pub. Act 80-59) which contained a definite sum out of which credit hour grants for fiscal year 1978 were to be paid. Although it is well established that the legislature is presumed not to have done a useless thing in enacting a statute (*Pinkstaff v. Pennsylvania R.R. Co.* (1964), 31 Ill. 2d 518, 202 N.E.2d 512), defendants' argument that the absence of a rate schedule left them without authority to pay plaintiff's claims would make the opposite presumption regarding the appropriations act. Based on all of the above, we conclude that under section

2—16 of the statute defendants had the duty and authority to certify plaintiff's claims, and were properly compelled to do so by the circuit court.

■■ Finally, defendants cite the fact that section 2—16 was amended in an act (Pub. Act 80-3 2d Sp. Sess.) which was signed into effect by the governor on December 3, 1977. That act eliminated the $17.61 minimum rate of payment, provided a rate schedule for various instructional programs, and ordered that for fiscal year 1978, an additional $1.73 per credit hour would be paid for each instructional category. Defendants argue that the amendatory act should be given retroactive application and the order compelling certification under the former minimum rate of $17.61 should be reversed. Defendants concede, however, that plaintiff's claims accrued and were properly filed prior to the passage of the amendatory act, and further concede that the amendatory act contained no express language declaring it to be retroactive. An amendatory act is ordinarily construed only as prospective, unless it contains express language declaring it to be retroactive. (*People ex rel. Saam v. Village of Green Oaks* (1965), 55 Ill. App. 2d 51, 204 N.E.2d 149; *People ex rel. County of St. Clair v. Reinhardt* (1964), 51 Ill. App. 2d 110, 201 N.E.2d 4.) There is nothing in defendants' recitation of the amendatory acts "legislative history" which overcomes that principle or indicates a contrary intent of the legislature. Defendants also cite as supportive the fact that plaintiff's claims accrued in fiscal year 1978, and that the amendatory act provided for an additional $1.73 per credit hour to be paid "[f]or fiscal year 1978 only." This language, however, certainly does not amount to express language of retroactivity and, since the amendatory act was passed within fiscal year 1978, is just as easily interpreted as having the standard prospective effect. Defendants' final argument for retroactivity is that "the appropriation ordinance, for fiscal year 1978, Public Act 80-59, is of no practical significance unless the State Board is given legislative directions for the method of computing the grant" in the form of the amendatory act's rate schedule. This argument again ignores the fact that the former version of section 2—16 directed that payments be made at no less than $17.61 per semester hour. In light of that provision, the argument that a retroactive application of the amendatory act is needed to give defendants "legislative directions" must fail.

Based on the foregoing, the order of the circuit court granting summary judgment in favor of plaintiff is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.