MARIA ALENCASTRO, Plaintiff-Appellant, v. MICHAEL F. SHEAHAN, Indiv. and in his Official Capacity as Cook County Sheriff, Defendant-Appellee (Citibank, F.S.B, *et al.*, Defendants).

First District (2nd Division)    No. 1—97—0772

Opinion filed July 28, 1998.

Joann F. Villasenor and Jennifer J. Payne, both of Legal Assistance Foundation, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Patricia M. Shymanski, Allen Kirsch, and Donna M. Lach, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE COUSINS delivered the opinion of the court:

Plaintiff, Maria Alencastro, filed suit against defendant, Sheriff Michael Sheahan, two of defendant's deputies, and Citibank, F.S.B. (Citibank), for illegally evicting plaintiff from her apartment. The trial court dismissed plaintiff's civil rights claims against defendant Sheahan based on sovereign immunity and dismissed plaintiff's state negligence claim based on lack of jurisdiction. On appeal, plaintiff argues that the trial court erred by: (1) determining that defendant acted as an arm of the state when enforcing the court order for possession against plaintiff; (2) dismissing plaintiff's civil rights claim against defendant in his individual capacity; and (3) finding that the trial court lacked jurisdiction to adjudicate plaintiff's negligence claim.

BACKGROUND

Plaintiff moved into an apartment in Chicago, Illinois, in April

1991, under an oral month-to-month lease with the owner of the premises, Jose Vega. On October 27, 1993, Citibank initiated an action in the circuit court of Cook County to foreclose its mortgage on the premises. Plaintiff was not made a party to the foreclosure action. On April 14, 1994, an order of default and a judgment of foreclosure were entered in favor of Citibank. On August 4, 1994, the trial court entered an order prepared by Citibank approving the sheriff's report of sale and granting possession of the subject real property to Citibank. The order stated:

> "[T]he Sheriff of Cook County is ordered to evict the defendants, Jose Vega, a/k/a Jose Luis Vega, Sr., Laura Vega, a/k/a Laura E. Vega, Jose Luis Vega, Jr., and Cosmopolitan National Bank of Chicago, as Trustee under Trust Agreement dated January 2, 1989[,] *** from the real estate and premises commonly known as 2405 South Hamlin, Chicago, Illinois, and the Sheriff of Cook County is directed to place Citibank, F.S.B. *** in possession of said real estate and premises after the thirtieth day from the entry of this Order confirming Sheriff's Sale, without notice to any party, further order of the Court or resort to proceedings under any statute."

Plaintiff was never notified about the foreclosure proceedings or the sale of the premises. Nevertheless, on October 6, 1994, a Citibank representative and two deputies visited the premises to evict plaintiff. Although plaintiff was not specifically named in the foreclosure action or in the resulting order for possession and, after the eviction commenced, plaintiff's sister informed the deputies that the apartment was occupied by plaintiff, the deputies executed the order and evicted plaintiff.

Plaintiff subsequently filed this action, which includes two counts against defendant Sheahan. Count IV of plaintiff's complaint alleges that defendant is liable in both his official and individual capacities under 42 U.S.C. § 1983 (1994) for maintaining a policy or procedure that allowed persons not named in a court order for possession to be summarily evicted. Count II of plaintiff's complaint alleges that defendant is statutorily liable for the negligence of his deputies under section 3—6016 of the Illinois Counties Code (55 ILCS 5/3—6016 (West 1992)).

The trial court dismissed count IV, reasoning that defendant acted as an arm of the state in executing the court order for possession, thus rendering him protected by sovereign immunity. The trial court also dismissed plaintiff's count II for lack of jurisdiction, based on the court's determination that defendant's status as a state actor rendered him amenable to suit only in the Illinois Court of Claims. In January

1997, the trial court ruled that the dismissals of counts II and IV were final and appealable pursuant to Supreme Court Rule 304(a). 134 Ill. 2d R. 304(a). Plaintiff filed a timely appeal from those two final judgments.

We affirm.

ANALYSIS

■ Plaintiff appeals the trial court's dismissal of counts II and IV pursuant to defendant's section 2—619 motion to dismiss. 735 ILCS 5/2—619 (West 1992). Appellate review of a section 2—619 dismissal is *de novo*, as it is limited to consideration of legal questions presented by pleadings and is, therefore, independent of the trial court's reasoning. *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997); *O'Hare Truck Service, Inc. v. Illinois State Police*, 284 Ill. App. 3d 941, 945, 673 N.E.2d 731, 734 (1996).

Plaintiff first contends that the trial court erred by dismissing count IV of her complaint. Specifically, plaintiff argues that the trial court erroneously recognized defendant as having sovereign immunity by concluding that defendant was a state actor for purposes of executing a state-court order for possession. Alternatively, plaintiff contends that defendant acted beyond the scope of his authority by evicting a party not named in the court order, thus extinguishing any immunity defendant may have enjoyed.

■ Plaintiff correctly states that the crux of the issue of immunity with respect to her "official capacity" section 1983 claim is whether defendant is to be recognized as a state actor when executing court orders for possession. The distinction between defendant's status as a county agent, as opposed to a state agent, is critical, since county officials are not given the same immunity from lawsuits that is conferred upon state officials. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 280, 50 L. Ed. 2d 471, 479, 97 S. Ct. 568, 572 (1977) (state entities' immunity from prosecution unavailable to counties and similar municipal entities). The basis for this rule lies in the well-recognized concept that official acts of state officers are, in effect, acts of the state. *Senn Park Nursing Center v. Miller*, 104 Ill. 2d 169, 188 (1984). Of particular significance is the Illinois Supreme Court ruling that the "determination of whether an action is in fact a suit against the state turns upon an analysis of the issues involved and the relief sought, rather than the formal designation of the parties." *Noyola v. Board of Education*, 179 Ill. 2d 121, 134-35 (1997); *Currie v. Lao*, 148 Ill. 2d 151, 158 (1992), citing *Healy v. Vaupel*, 133 Ill. 2d 295, 308 (1990).

In this matter, we find *Scott v. O'Grady*, 975 F.2d 366 (7th Cir.

1992), *cert. denied*, 508 U.S. 942, 124 L. Ed. 2d 643, 113 S. Ct. 2421 (1993), to be instructive. In *Scott,* the plaintiff executed a lease agreement with the owner of an apartment building. The plaintiff was unaware that the property was subject to a foreclosure action against the owner at that time. Soon thereafter, judgment for foreclosure was entered and the property was sold. The new owner obtained a writ of assistance pursuant to the Illinois Mortgage Foreclosure Law (735 ILCS 5/15—1101 *et seq.* (West 1992)), directing the sheriff of Cook County to evict all individuals on the property. The plaintiff was not privy to these actions and continued to pay rent to the initial owner. The plaintiff subsequently filed suit, alleging that his due process rights were violated as a result of not being given notice of the eviction proceedings and not being named in the writ of assistance.

The court of appeals in *Scott* held that the "county sheriff act[ed] as an arm of the Illinois state judicial system in executing Writs of Assistance and other state court orders." *Scott,* 975 F.2d at 371. The court reasoned that the sheriff had a statutory duty to execute such orders decreed by state courts and that failure to execute them would have subjected the sheriff to contempt proceedings and liability for damages. *Scott,* 975 F.2d at 371. The court in *Scott* concluded that a sheriff's nondiscretionary, statutory duty to execute such state-court orders militates heavily in favor of recognizing that a sheriff acts as a state official in such a capacity. *Scott,* 975 F.2d at 371.

We agree with the court of appeals in *Scott.* In the present case, it is undisputed that defendant's deputies were carrying out a valid court order for possession. Considering that defendant was dutybound to execute the direction of the court, we determine that defendant was a state actor in the instant case. Plaintiff, nevertheless, argues that the trial court in the case at bar erroneously assumed that *Scott* sets out a *per se* rule—*i.e.,* that a sheriff enforcing a state-court order is always a state actor. We find no evidence in the record to support plaintiff's contention that the trial court interpreted *Scott* in such a manner. Plaintiff also argues that the United States Supreme Court in *McMillian v. Monroe County, Alabama,* 520 U.S. 781, 138 L. Ed. 2d 1, 117 S. Ct. 1734 (1997), recommended a more searching analysis when determining a sheriff's immunity status.

The *McMillian* test for deciding whether an official is a state or county actor in a specific instance requires a court to determine, based upon state law, whether the official is a final policymaker for the local government on the issue in question. *McMillian,* 520 U.S. at 785-86, 138 L. Ed. 2d at 7-8, 117 S. Ct. at 1736-37, citing *Jett v. Dallas Independent School District,* 491 U.S. 701, 737, 105 L. Ed. 2d 598, 627-28, 109 S. Ct. 2702, 2723-24 (1989). In *McMillian,* the plaintiff sued a

county sheriff under 42 U.S.C. § 1983 after the plaintiff's capital murder conviction was reversed on the ground that the state, via the sheriff, suppressed exculpatory evidence. The United States Supreme Court held that, when an Alabama sheriff executes his law enforcement duties in the course of a criminal investigation, he represents the State of Alabama, not the county in which he acts. *McMillian*, 520 U.S. at 793, 138 L. Ed. 2d at 12, 117 S. Ct. at 1740.

■ In our view, *McMillian* is inapposite to the instant case. *McMillian* involved a sheriff who allegedly violated the plaintiff's constitutional rights by coercing a witness into providing false testimony and by suppressing exculpatory evidence, resulting in the plaintiff's murder conviction and death sentence. However, *McMillian* in no way applied its test to a sheriff's role in the civil realm, let alone the areas of mortgage foreclosure and eviction proceedings. Moreover, were we to apply the test delineated in *McMillian* to the present case, we would still conclude that defendant was a state actor in executing the court order for possession. Our state law provides that "[s]heriffs shall serve and execute *** all warrants, process, orders and judgments of every description that may be legally directed or delivered to them." 55 ILCS 5/3—6019 (West 1992). Illinois law further states:

> "[D]isobedience of any sheriff to perform the command of any warrant, process, order or judgment *** shall be deemed a contempt of the court that issued the same, and may be punished accordingly; and he or she shall be liable to the party aggrieved for all damages occasioned thereby." 55 ILCS 5/3—6020 (West 1992).

Based upon the test set forth in *McMillian*, we believe that Illinois state law and its treatment of sheriffs in the execution of their duties with respect to eviction proceedings amply support the conclusion that defendant lacked final policymaking power in this area. Consequently, we hold that the sheriff acts as an arm of the State of Illinois when executing court orders for possession.

Before departing from this issue, we note that plaintiff claims to find further support from the case of *Rembert v. Sheahan*, 62 F.3d 937 (7th Cir. 1995). Plaintiff, however, relies upon a footnote in *Rembert*, which states in relevant part:

> "The Sheriff is an integral part of the State machinery that allows purchasers of mortgaged real estate to take possession of that real estate. He cannot credibly take the position that he has no duty to ensure that proper procedures have been followed prior to evicting tenants." *Rembert*, 62 F.3d at 941 n.1.

Although defendant's office clearly plays a role in the eviction process, that is not to say that defendant exercises final policymaking authority over that process. Also, while the *Rembert* litigation ultimately

resulted in the promulgation of a new policy stating that the sheriff essentially may only evict individuals personally named in orders for possession, that new policy became effective approximately two years after defendant executed the instant order for possession against plaintiff. See *Rembert v. Sheahan*, No. 92—C—67 (N.D. Ill. November 3, 1995). Additionally, we note that, in granting the sheriff's motion for summary judgment as to damages, the plaintiffs in *Rembert* were denied any retroactive relief (due to the sheriff's immunity) and ultimately obtained only the aforementioned prospective injunctive relief (which is not subject to immunity). See *Papasan v. Allain*, 478 U.S. 265, 277-78, 92 L. Ed. 2d 209, 226-27, 106 S. Ct. 2932, 2940 (1986) ("official capacity" suit for prospective injunctive relief is an exception to the bar against suits against state actors); *In re R.V.*, 288 Ill. App. 3d 860, 867, 681 N.E.2d 660, 666 (1997).

■ Nevertheless, an additional inquiry remains: whether plaintiff may maintain her section 1983 action against defendant in state court, despite defendant's status as a state actor. Although the eleventh amendment is inapplicable to state-court actions (*Maine v. Thiboutot*, 448 U.S. 1, 9 n.7, 65 L. Ed. 2d 555, 562 n.7, 100 S. Ct. 2502, 2507 n.7 (1980) (no eleventh amendment question present where action is brought in state court, since the amendment, by its terms, restrains only federal judicial power)), it is a major factor considered by the United States Supreme Court in determining section 1983 cases brought in state courts. On this issue, an instructive case is *Will v. Michigan Department of State Police*, 491 U.S. 58, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989). In that case, the petitioner filed section 1983 suits in the Michigan state court alleging that the Department of State Police and the Director of State Police had improperly denied petitioner a promotion. The Supreme Court held that, in light of the states' historical immunity under the eleventh amendment, neither states nor state officials acting in their official capacities are "persons" within the meaning of section 1983. *Will*, 491 U.S. at 71, 105 L. Ed. 2d at 58, 109 S. Ct. at 2312. Significantly, the Court also stated:

> "Given that a principal purpose behind the enactment of [section] 1983 was to provide a federal forum for civil rights claims, and that Congress did not provide such a federal forum for civil rights claims against States, we cannot accept petitioner's argument that Congress intended nevertheless to create a cause of action against States to be brought in state courts, which are precisely the courts Congress sought to allow civil rights claimants to avoid through [section] 1983." *Will*, 491 U.S. at 66, 105 L. Ed. 2d at 55, 109 S. Ct. at 2310.

In our opinion, *Scott* and *Will* are dispositive of this issue.

Consequently, we conclude that defendant's actions as an official on behalf of the Illinois judiciary preclude plaintiff's "official capacity" section 1983 claim in state court.

Plaintiff argues in the alternative that, assuming defendant acts as an arm of the state when executing court orders for possession, defendant nevertheless acted beyond the scope of his authority with respect to the instant court order. Plaintiff maintains that defendant's acts in excess of his authority eliminated defendant's sovereign immunity and exposed him to section 1983 liability.

Generally, while official acts of state officers are considered acts of the state itself, acts that are illegal, unconstitutional, or performed under authority that the state official does not have render that official personally amenable to suit. *Senn Park Nursing Center v. Miller*, 104 Ill. 2d 169, 188 (1984). In such a case, a plaintiff may bring suit against the officer in his or her individual capacity, as the action is no longer considered an action against the State of Illinois. *Miller*, 104 Ill. 2d at 188.

In the case *sub judice*, plaintiff contends that defendant exceeded his authority by evicting a party not named in the court order for possession. Plaintiff principally relies upon the following three cases in support of her position: *Ruehman v. Sheahan*, 34 F.3d 525 (7th Cir. 1994) (in designing and implementing computer system for tracking active arrest warrants, sheriff was not acting as arm of the state where sheriff failed to purge quashed and recalled warrants, causing plaintiffs to be improperly arrested); *Jackson v. Doria*, 851 F. Supp. 288 (N.D. Ill. 1994) (sovereign immunity unavailable to sheriff for failing to institute procedure that would have prevented plaintiff from being repeatedly arrested pursuant to a warrant issued against another person); and *Hvorcik v. Sheahan*, 847 F. Supp. 1414 (N.D. Ill. 1994) (sheriff's failure to maintain accurate records of traffic warrants, resulting in unlawful arrests and detention of plaintiffs on recalled warrants, rendered sheriff's absolute immunity inoperative).

In our view, the above cases are distinguishable, because they all involve actions by the sheriff concerning the execution of discretionary or nonministerial policies or procedures that the sheriff himself instituted in his role as an arm of the county. Contrarily, in the case at bar, defendant was charged with the nondiscretionary duty of executing a court order. Considering that the language of the instant court order for possession directed defendant to "place Citibank *** in possession of said real estate and premises *** without notice to any party, further order of the Court or resort to proceedings under any statute," and that the validity of that order is uncontested, we are not persuaded that defendant acted beyond the scope of his authority.

■ We also conclude that plaintiff's identical section 1983 claim against defendant in his individual capacity was properly dismissed. As a rule, an individual cannot be held liable in a section 1983 action absent a finding that he or she caused or participated in the alleged constitutional violation. *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). Additionally, liability cannot be imposed upon a supervisory official without establishing that the official was directly responsible for the improper activity. *Rizzo v. Goode*, 423 U.S. 362, 373-77, 46 L. Ed. 2d 561, 571-73, 96 S. Ct. 598, 605-07 (1976). Based upon the foregoing and the fact that plaintiff has failed to show that defendant was in any way directly involved in the instant eviction incident, we believe that plaintiff's "individual capacity" section 1983 claim lacks merit.

■ Plaintiff further contends that *Rembert* is instructive as to plaintiff's position that defendant Sheahan violated the Illinois Mortgage Foreclosure Law by evicting a party not named in the order for possession. See 735 ILCS 5/15—1508(g) (West 1994). We disagree. Significantly, throughout the trial court proceedings and in plaintiff's opening brief on appeal, plaintiff's contentions with respect to specific violations of the Illinois Mortgage Foreclosure Law have been directed at the actions of defendant Citibank, not defendant Sheahan. Indeed, plaintiff's consistent arguments that it was Citibank that actually violated the Illinois Mortgage Foreclosure Law and that Citibank could have avoided such violation by filing a supplemental petition for notice thereunder belie plaintiff's later contention that Sheahan's actions violated the Illinois Mortgage Foreclosure Law.

■ Finally, plaintiff contends that the trial court erred by dismissing her statutory negligence claim against defendant pursuant to section 3—6016 of the Illinois Counties Code. 55 ILCS 5/3—6016 (West 1992). That statute provides that the "sheriff shall be liable for any neglect or omission of the duties of his or her office, when occasioned by a deputy or auxiliary deputy, in the same manner as for his or her own personal neglect or omission." 55 ILCS 5/3—6016 (West 1992).

The relevant approach regarding a claim of negligence against a state agent is to examine the source of the duty the agent is alleged to have breached. *Currie v. Lao*, 148 Ill. 2d 151, 159 (1992). When negligence stems from the state actor's breach of a duty imposed solely by his directives from the state, immunity applies and bars the action in trial court. *Swanigan v. Smith*, 294 Ill. App. 3d 263, 269, 689 N.E.2d 637, 641 (1998). The basis for this rule lies in the statute enacted by the Illinois General Assembly (745 ILCS 5/1 (West 1992)) declaring that the state may not be made a defendant or a party in any court except as set forth in the Court of Claims Act (705 ILCS 505/1 *et seq.* (West 1992)). The Court of Claims Act provides that the Court of Claims:

"shall have exclusive jurisdiction to hear and determine ***:
(a) All claims against the state founded upon any law of the State of Illinois, or upon any regulation thereunder by an executive or administrative officer or agency ***." 705 ILCS 505/8 (West 1992). Furthermore, this court stated in *Swanigan*, 294 Ill. App. 3d at 269, 689 N.E.2d at 641, and *Boards of Education of School Districts 67, 68, 69, 70, 71, 72, 73½, 74 & 219 v. Cronin*, 54 Ill. App. 3d 584, 586, 370 N.E.2d 19, 21 (1977), that, when judgment for a plaintiff may operate to control the state's actions or subject the state to liability, an action brought against a state agent in his or her individual capacity will be deemed to be a claim against the state and, thus, must be brought in the Court of Claims. See also *Healy v. Vaupel*, 133 Ill. 2d 295, 308 (1990); *Miller*, 104 Ill. 2d at 187, quoting *Sass v. Kramer*, 72 Ill. 2d 485, 491-92 (1978) (rule against making state a party to suit cannot be evaded by making action nominally one against agents of state when the true claim lies against state itself and when the state is the party vitally interested). Thus, such claims against the state brought in the circuit court are barred by operation of the Court of Claims Act.

Based upon our view that the alleged negligence of the instant defendant originated from his execution of duties imposed by the state, we conclude that plaintiff's claim remains a claim against the State of Illinois. A consequence of this decision is that, while plaintiff's claim is not precluded simply by virtue of defendant being cloaked with immunity, plaintiff may only bring her section 3—6016 claim in the Illinois Court of Claims, as it has exclusive jurisdiction to adjudicate actions against the state or its officials acting on behalf of the state.

Accordingly, we affirm the decision of the circuit court.

Affirmed.

McNULTY, P.J., and RAKOWSKI, J., concur.