1-97-0772

                 SECOND DIVISION

JULY 28, 1998

MARIA ALENCASTRO,                        )    APPEAL FROM THE

                                         )    CIRCUIT COURT OF

          Plaintiff-Appellant,           )    COOK COUNTY

                                         )

          v.                             )

                                         )

MICHAEL F. SHEAHAN, Indiv. and           )

in his official capacity as              )    No. 95-L-14466

Cook County Sheriff,                     )

                                         )

          Defendant-Appellee             )

                                         )

(Citibank, F.S.B., and Two Unknown       )

Deputies,                                )    THE HONORABLE

                                         )    Joseph N. Casciato,

          Defendants).                   )    JUDGE PRESIDING.

MODIFIED UPON DENIAL OF REHEARING

            JUSTICE COUSINS delivered the opinion of the court:

     Plaintiff, Maria Alencastro, filed suit against defendant,

Sheriff Michael Sheahan, two of defendant's deputies, and

Citibank, F.S.B. (Citibank), for illegally evicting plaintiff

from her apartment.  The trial court dismissed plaintiff's civil

rights claims against defendant Sheahan based on sovereign

immunity and dismissed plaintiff's state negligence claim based

on lack of jurisdiction.  On appeal, plaintiff argues that the

trial court erred by:  (1) determining that defendant acted as an

arm of the state when enforcing the court order for possession

against plaintiff; (2) dismissing plaintiff's civil rights claim

against defendant in his individual capacity; and (3) finding

that the trial court lacked jurisdiction to adjudicate

plaintiff's negligence claim.

BACKGROUND

     Plaintiff moved into an apartment in Chicago, Illinois, in

April 1991, under an oral month-to-month lease with the owner of

the premises, Jose Vega.  On October 27, 1993, Citibank initiated

an action in the circuit court of Cook County to foreclose its

mortgage on the premises.  Plaintiff was not made a party to the

foreclosure action.  On April 14, 1994, an order of default and a

judgment of foreclosure were entered in favor of Citibank.  On

August 4, 1994, the trial court entered an order prepared by

Citibank approving the sheriff's report of sale and granting

possession of the subject real property to Citibank.  The order

stated:

     "[T]he Sheriff of Cook County is ordered to evict the

     defendants, Jose Vega, a/k/a Jose Luis Vega, Sr., Laura

     Vega, a/k/a Laura E. Vega, Jose Luis Vega, Jr., and

     Cosmopolitan National Bank of Chicago, as Trustee under

     Trust Agreement dated January 2, 1989[,] *** from the

     real estate and premises commonly known as 2405 South

     Hamlin, Chicago, Illinois, and the Sheriff of Cook

     County is directed to place Citibank, F.S.B. *** in

     possession of said real estate and premises after the

     thirtieth day from the entry of this Order confirming

     Sheriff's Sale, without notice to any party, further

     order of the Court or resort to proceedings under any

     statute."

          Plaintiff was never notified about the foreclosure

proceedings or the sale of the premises.  Nevertheless, on

October 6, 1994, a Citibank representative and two deputies

visited the premises to evict plaintiff.  Although plaintiff was

not specifically named in the foreclosure action or in the

resulting order for possession, and, after the eviction

commenced, plaintiff's sister informed the deputies that the

apartment was occupied by plaintiff, the deputies executed the

order and evicted plaintiff.

     Plaintiff subsequently filed this action, which includes two

counts against defendant Sheahan.  Count IV of plaintiff's

complaint alleges that defendant is liable in both his official

and individual capacities under 42 U.S.C §1983 (1994) for

maintaining a policy or procedure that allowed persons not named

in a court order for possession to be summarily evicted.  Count

II of plaintiff's complaint alleges that defendant is statutorily

liable for the negligence of his deputies under section 3-6016 of

the Illinois Counties Code (55 ILCS 5/3-6016 (West 1992)).

     The trial court dismissed count IV, reasoning that defendant

acted as an arm of the state in executing the court order for

possession, thus rendering him protected by sovereign immunity. 

The trial court also dismissed plaintiff's count II for lack of

jurisdiction, based on the court's determination that defendant's

status as a state actor rendered him amenable to suit only in the

Illinois Court of Claims.  In January 1997, the trial court ruled

that the dismissals of counts II and IV were final and appealable

pursuant to Supreme Court Rule 304(a). 134 Ill. 2d R. 304(a). 

Plaintiff filed a timely appeal from those two final judgments.

     We affirm.

ANALYSIS

     Plaintiff appeals the trial court's dismissal of counts II

and IV pursuant to defendant's section 2-619 motion to dismiss.

735 ILCS 5/2-619 (West 1992).  Appellate review of a section 2-

619 dismissal is de novo, as it is limited to consideration of

legal questions presented by pleadings and is, therefore,

independent of the trial court's reasoning.  Epstein v. Chicago

Board of Education, 178 Ill. 2d 370, 383 (1997); O'Hare Truck

Service, Inc. v. Illinois State Police, 284 Ill. App. 3d 941,

945, 673 N.E.2d 731, 734 (1996).

     Plaintiff first contends that the trial court erred by

dismissing count IV of her complaint.  Specifically, plaintiff

argues that the trial court erroneously recognized defendant as

having sovereign immunity by concluding that defendant was a

state actor for purposes of executing a state court order for

possession.  Alternatively, plaintiff contends that defendant

acted beyond the scope of his authority by evicting a party not

named in the court order, thus extinguishing any immunity

defendant may have enjoyed.

     Plaintiff correctly states that the crux of the issue of

immunity with respect to her "official capacity" section 1983

claim is whether defendant is to be recognized as a state actor

when executing court orders for possession.  The distinction

between defendant's status as a county agent, as opposed to a

state agent, is critical, since county officials are not given

the same immunity from lawsuits that is conferred upon state

officials. Mt. Healthy City School District Board of Education v.

Doyle, 429 U.S. 274, 280, 50 L. Ed. 2d 471, 479, 97 S. Ct. 568,

572 (1977) (state entities' immunity from prosecution unavailable

to counties and similar municipal entities).  The basis for this

rule lies in the well-recognized concept that official acts of

state officers are, in effect, acts of the state. Senn Park

Nursing Center v. Miller, 104 Ill. 2d 169, 188 (1984).  Of

particular significance is the Illinois Supreme Court ruling that

the "determination of whether an action is in fact a suit against

the State turns upon an analysis of the issues involved and the

relief sought, rather than the formal designation of the

parties." Noyola v. Board of Education, 179 Ill. 2d 121, 134-35

(1997); Currie v. Lao, 148 Ill. 2d 151, 158 (1992), citing Healy

v. Vaupel, 133 Ill. 2d 295, 308 (1990).

     In this matter, we find Scott v. O'Grady, 975 F.2d 366 (7th

Cir. 1992), cert. denied, 508 U.S. 942, 124 L. Ed. 2d 643, 113 S.

Ct. 2421 (1993), to be instructive.  In Scott, the plaintiff

executed a lease agreement with the owner of an apartment

building.  The plaintiff was unaware that the property was

subject to a foreclosure action against the owner at that time. 

Soon thereafter, judgment for foreclosure was entered and the

property was sold.  The new owner obtained a writ of assistance

pursuant to the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-

1101 et seq. (West 1992)), directing the sheriff of Cook County

to evict all individuals on the property.  The plaintiff was not

privy to these actions and continued to pay rent to the initial

owner.  The plaintiff subsequently filed suit, alleging that his

due process rights were violated as a result of not being given

notice of the eviction proceedings and not being named in the

writ of assistance.

     The Court of Appeals in Scott held that the "county sheriff

act[ed] as an arm of the Illinois state judicial system in

executing Writs of Assistance and other state court orders."

Scott, 975 F.2d at 371.  The court reasoned that the sheriff had

a statutory duty to execute such orders decreed by state courts

and that failure to execute them would have subjected the sheriff

to contempt proceedings and liability for damages. Scott, 975

F.2d at 371.  The court in Scott concluded that a sheriff's

nondiscretionary, statutory duty to execute such state-court

orders militates heavily in favor of recognizing that a sheriff

acts as a state official in such a capacity. Scott, 975 F.2d at

371.

     We agree with the Court of Appeals in Scott.  In the present

case, it is undisputed that defendant's deputies were carrying

out a valid court order for possession.  Considering that

defendant was dutybound to execute the direction of the court, we

determine that defendant was a state actor in the instant case. 

Plaintiff, nevertheless, argues that the trial court in the case

at bar erroneously assumed that Scott sets out a per se rule--

i.e., that a sheriff enforcing a state court order is always a

state actor.  We find no evidence in the record to support

plaintiff's contention that the trial court interpreted Scott in

such a manner.  Plaintiff also argues that the United States

Supreme Court in McMillian v. Monroe County, Alabama, 520 U.S.

___, 138 L. Ed. 2d 1, 117 S. Ct. 1734 (1997), recommended a more

searching analysis when determining a sheriff's immunity status.

     The McMillian test for deciding whether an official is a

state or county actor in a specific instance requires a court to

determine, based upon state law, whether the official is a final

policymaker for the local government on the issue in question. 

McMillian, 520 U.S. at ___, 138 L. Ed. 2d at 7-8, 117 S. Ct. at

1736-37, citing Jett v. Dallas Independent School District, 491

U.S. 701, 737, 105 L. Ed. 2d 598, 627-28, 109 S. Ct. 2702, 2723-

24 (1989).  In McMillian, the plaintiff sued a county sheriff

under 42 U.S.C. §1983 after the plaintiff's capital murder

conviction was reversed on the ground that the state, via the

sheriff, suppressed exculpatory evidence.  The United States

Supreme Court held that, when an Alabama sheriff executes his law

enforcement duties in the course of a criminal investigation, he

represents the State of Alabama, not the county in which he acts.

McMillian, 520 U.S. at ___, 138 L. Ed. 2d at 12, 117 S. Ct. at

1740.

     In our view, McMillian is inapposite to the instant case. 

McMillian involved a sheriff who allegedly violated the

plaintiff's constitutional rights by coercing a witness into

providing false testimony and by suppressing exculpatory

evidence, resulting in the plaintiff's murder conviction and

death sentence.  However, McMillian in no way applied its test to

a sheriff's role in the civil realm, let alone the areas of

mortgage foreclosure and eviction proceedings.  Moreover, were we

to apply the test delineated in McMillian to the present case, we

would still conclude that defendant was a state actor in

executing the court order for possession.  Our state law provides

that "[s]heriffs shall serve and execute *** all warrants,

process, orders and judgments of every description that may be

legally directed or delivered to them." 55 ILCS 5/3-6019 (West

1992).  Illinois law further states:

     "[D]isobedience of any sheriff to perform the command

     of any warrant, process, order or judgment *** shall be

     deemed a contempt of the court that issued the same,

     and may be punished accordingly; and he or she shall be

     liable to the party aggrieved for all damages

     occasioned thereby." 55 ILCS 5/3-6020 (West 1992).

     Based upon the test set forth in McMillian, we believe that

Illinois state law and its treatment of sheriffs in the execution

of their duties with respect to eviction proceedings amply

supports the conclusion that defendant lacked final policymaking

power in this area.  Consequently, we hold that the sheriff acts

as an arm of the State of Illinois when executing court orders

for possession.

     Before departing from this issue, we note that plaintiff

claims to find further support from the case of Rembert v.

Sheahan, 62 F.3d 937 (7th Cir. 1995).  Plaintiff, however, relies

upon a footnote in Rembert, which states in relevant part:

     "The Sheriff is an integral part of the State machinery

     that allows purchasers of mortgaged real estate to take

     possession of that real estate.  He cannot credibly

     take the position that he has no duty to ensure that

     proper procedures have been followed prior to evicting

     tenants." Rembert, 62 F.3d at 941 n.1.

     Although defendant's office clearly plays a role in the eviction

process, that is not to say that defendant exercises final

policymaking authority over that process.  Also, while the

Rembert litigation ultimately resulted in the promulgation of a

new policy stating that the sheriff essentially may only evict

individuals personally named in orders for possession, that new

policy became effective approximately two years after defendant

executed the instant order for possession against plaintiff. See

Rembert v. Sheahan, No. 92-C-67 (N.D. Ill. November 3, 1995). 

Additionally, we note that, in granting the sheriff's motion for

summary judgment as to damages, the plaintiffs in Rembert were

denied any retroactive relief (due to the sheriff's immunity) and

ultimately obtained only the aforementioned prospective

injunctive relief (which is not subject to immunity). See Papasan

v. Allain, 478 U.S. 265, 277-78, 92 L. Ed. 2d 209, 226-27, 106 S.

Ct. 2932, 2940 (1986) ("official capacity" suit for prospective

injunctive relief is an exception to the bar against suits

against state actors); In re R.V., 288 Ill. App. 3d 860, 867, 681

N.E.2d 660, 666 (1997).

     Nevertheless, an additional inquiry remains:  whether

plaintiff may maintain her section 1983 action against defendant

in state court, despite defendant's status as a state actor. 

Although the eleventh amendment is inapplicable to state-court

actions (Maine v. Thiboutot, 448 U.S. 1, 9 n.7, 65 L. Ed. 2d 555,

562 n.7, 100 S. Ct. 2502, 2507 n.7 (1980) (no eleventh amendment

question present where action is brought in state court, since

the amendment, by its terms, restrains only federal judicial

power)), it is a major factor considered by the United States

Supreme Court in determining section 1983 cases brought in state

courts.  On this issue, an instructive case is Will v. Michigan

Department of State Police, 491 U.S. 58, 105 L. Ed. 2d 45, 109 S.

Ct. 2304 (1989).  In that case, the petitioner filed section 1983

suits in the Michigan state court alleging that the Department of

State Police and the Director of State Police had improperly

denied petitioner a promotion.  The Supreme Court held that, in

light of the states' historical immunity under the eleventh

amendment, neither states nor state officials acting in their

official capacities are "persons" within the meaning of section

1983. Will, 491 U.S. at 71, 105 L. Ed. 2d at 58, 109 S. Ct. at

2312.  Significantly, the Court also stated:

     "Given that a principal purpose behind the enactment of

     [section] 1983 was to provide a federal forum for civil

     rights claims, and that Congress did not provide such a

     federal forum for civil rights claims against States,

     we cannot accept petitioner's argument that Congress

     intended nevertheless to create a cause of action

     against States to be brought in state courts, which are

     precisely the courts Congress sought to allow civil

     rights claimants to avoid through [section] 1983."

     Will, 491 U.S. at 66, 105 L. Ed. 2d at 55, 109 S. Ct.

     at 2310.

          In our opinion, Scott and Will are dispositive of this

issue.  Consequently, we conclude that defendant's actions as an

official on behalf of the Illinois judiciary preclude plaintiff's

"official capacity" section 1983 claim in state court.

     Plaintiff argues in the alternative that, assuming defendant

acts as an arm of the state when executing court orders for

possession, defendant nevertheless acted beyond the scope of his

authority with respect to the instant court order.  Plaintiff

maintains that defendant's acts in excess of his authority

eliminated defendant's sovereign immunity and exposed him to

section 1983 liability.

     Generally, while official acts of state officers are

considered acts of the state itself, acts that are illegal,

unconstitutional, or performed under authority that the state

official does not have render that official personally amenable

to suit. Senn Park Nursing Center v. Miller, 104 Ill. 2d 169, 188

(1984).  In such a case, a plaintiff may bring suit against the 

officer in his or her individual capacity, as the action is no

longer considered an action against the State of Illinois.

Miller, 104 Ill. 2d at 188.

     In the case sub judice, plaintiff contends that defendant

exceeded his authority by evicting a party not named in the court

order for possession.  Plaintiff principally relies upon the

following three cases in support of her position:  Ruehman v.

Sheahan, 34 F.3d 525 (7th Cir. 1994) (in designing and

implementing computer system for tracking active arrest warrants,

sheriff was not acting as arm of the state where sheriff failed

to purge quashed and recalled warrants, causing plaintiffs to be

improperly arrested); Jackson v. Doria, 851 F. Supp. 288 (N.D.

Ill. 1994) (sovereign immunity unavailable to sheriff for failing

to institute procedure that would have prevented plaintiff from

being repeatedly arrested pursuant to a warrant issued against

another person); and Hvorcik v. Sheahan, 847 F. Supp. 1414 (N.D.

Ill. 1994) (sheriff's failure to maintain accurate records of

traffic warrants, resulting in unlawful arrests and detention of

plaintiffs on recalled warrants, rendered sheriff's absolute

immunity inoperative).

     In our view, the above cases are distinguishable, because

they all involve actions by the sheriff concerning the execution

of discretionary or nonministerial policies or procedures that

the sheriff himself instituted in his role as an arm of the

county.  Contrarily, in the case at bar, defendant was charged

with the nondiscretionary duty of executing a court order. 

Considering that the language of the instant court order for

possession directed defendant to "place Citibank *** in

possession of said real estate and premises *** without notice to

any party, further order of the Court or resort to proceedings

under any statute," and that the validity of that order is

uncontested, we are not persuaded that defendant acted beyond the

scope of his authority.

     We also conclude that plaintiff's identical section 1983

claim against defendant in his individual capacity was properly

dismissed.  As a rule, an individual cannot be held liable in a

section 1983 action absent a finding that he or she caused or

participated in the alleged constitutional violation. Wolf-Lillie

v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983).  Additionally,

liability cannot be imposed upon a supervisory official without

establishing that the official was directly responsible for the

improper activity. Rizzo v. Goode, 423 U.S. 362, 373-77, 46 L.

Ed. 2d 561, 571-73, 96 S. Ct. 598, 605-07 (1976).  Based upon the

foregoing and the fact that plaintiff has failed to show that

defendant was in any way directly involved in the instant

eviction incident, we believe that plaintiff's "individual

capacity" section 1983 claim lacks merit.

     Plaintiff further contends that Rembert is instructive as to

plaintiff's position that defendant Sheahan violated the Illinois

Mortgage Foreclosure Law by evicting a party not named in the

order for possession. See 735 ILCS 5/15-1508(g) (West 1994).  We

disagree.  Significantly, throughout the trial court proceedings

and in plaintiff's opening brief on appeal, plaintiff's

contentions with respect to specific violations of the Illinois

Mortgage Foreclosure Law have been directed at the actions of

defendant Citibank, not defendant Sheahan.  Indeed, plaintiff's

consistent arguments that it was Citibank that actually violated

the Illinois Mortgage Foreclosure Law and that Citibank could

have avoided such violation by filing a supplemental petition for

notice thereunder belie plaintiff's later contention that

Sheahan's actions violated the Illinois Mortgage Foreclosure Law.

     Finally, plaintiff contends that the trial court erred by

dismissing her statutory negligence claim against defendant

pursuant to section 3-6016 of the Illinois Counties Code. 55 ILCS

5/3-6016 (West 1992).  That statute provides that the "sheriff

shall be liable for any neglect or omission of the duties of his

or her office, when occasioned by a deputy or auxiliary deputy,

in the same manner as for his or her own personal neglect or

omission." 55 ILCS 5/3-6016 (West 1992).

     The relevant approach regarding a claim of negligence

against a state agent is to examine the source of the duty the

agent is alleged to have breached.  Currie v. Lao, 148 Ill. 2d

151, 159 (1992).  When negligence stems from the state actor's

breach of a duty imposed solely by his directives from the state,

immunity applies and bars the action in trial court. Swanigan v.

Smith, 294 Ill. App. 3d 263, 269, 689 N.E.2d 637, 641 (1998). 

The basis for this rule lies in the statute enacted by the

Illinois General Assembly (745 ILCS 5/1 (West 1992)) declaring

that the state may not be made a defendant or a party in any

court except as set forth in the Court of Claims Act (705 ILCS

505/1 et seq. (West 1992)).  The Court of Claims Act provides

that the Court of Claims:

     "shall have exclusive jurisdiction to hear and

     determine ***:

          (a) All claims against the state founded upon any

     law of the State of Illinois, or upon any regulation

     thereunder by an executive or administrative officer or

     agency ***." 705 ILCS 505/8 (West 1992).

     Furthermore, this court stated in Swanigan, 294 Ill. App. 3d at

269, 689 N.E.2d at 641, and Boards of Education of School

Districts 67, 68, 69, 70, 71, 72, 73½, 74 & 219 v. Cronin, 54

Ill. App. 3d 584, 586, 370 N.E.2d 19, 21 (1977), that, when

judgment for a plaintiff may operate to control the state's

actions or subject the state to liability, an action brought

against a state agent in his or her individual capacity will be

deemed to be a claim against the state and, thus, must be brought

in the Court of Claims. See also Healy v. Vaupel, 133 Ill. 2d

295, 308 (1990); Miller, 104 Ill. 2d at 187, quoting Sass v.

Kramer, 72 Ill. 2d 485, 491-92 (1978) (rule against making state

a party to suit cannot be evaded by making action nominally one

against agents of state when the true claim lies against state

itself and when the state is the party vitally interested). 

Thus, such claims against the state brought in the circuit court

are barred by operation of the Court of Claims Act.

     Based upon our view that the alleged negligence of the

instant defendant originated from his execution of duties imposed

by the state, we conclude that plaintiff's claim remains a claim

against the State of Illinois.  A consequence of this decision is

that, while plaintiff's claim is not precluded simply by virtue

of defendant being cloaked with immunity, plaintiff may only

bring her section 3-6016 claim in the Illinois Court of Claims,

as it has exclusive jurisdiction to adjudicate actions against

the state or its officials acting on behalf of the state.

     Accordingly, we affirm the decision of the circuit court.

     Affirmed.

     McNULTY, P.J., and RAKOWSKI, J., concur.